All right, thank you. You can be seated. All right, Mr. Shoaff, whenever you're ready. Thank you. Good morning, Your Honors. Good morning. I'm going to ask your indulgence of me a little bit because I'm coming down with a cold and I will ask not to shake your hand because I don't want to spread the cold germs. My wife's been sick for a week with it, so it's my turn. Your Honor, my name is Milton B. Shoaff. I'm on the CJA panel in the Middle District. Pull that microphone maybe a little closer. Okay. There you go. That's great. That helps. I'm on the CJA panel in the Middle District of North Carolina. I was appointed to Representative Mark Concha and he was living in Arizona where his home is with wife and children. And it was an unusual case because there were a lot of drugs involved and he was, as the facts point out, he was interdicted in Arkansas while bringing a large amount of cocaine to North Carolina. He went with them. They arrested him. He went with them to continue his delivery with agents aboard and he made phone calls to his connection and they went through with the delivery. The two other individuals were arrested as a consequence. And during that time, he was allowed to remain at large. He was not put in jail right away. In fact, he was out for about 14 months and due to the extent of where he had been on several trips, he helped in various parts of the country where he had been to name people that he had delivered to, stash houses, et cetera. In fact, I listed in my sentencing memo about nine places and things that he had helped the government. And it was, we felt, truly a substantial help to the government. In fact, Mr. Gallion, reading the sentencing hearing transcript, probably did a better job than I did of advocating for his 5K1.1. And numerous times during that hearing, he told the judge that generally in a case that involves such a high degree of danger to himself, and if he goes in and helps during a drug setup, that is a very dangerous thing. And he said his office normally requests a 50 percent reduction. This, Mr. Shull, does it make any difference in the argument here that Judge Biggs got within 10 percent of what the government was asking for, or is it just strictly to be decided on the fact that he considered non-assistance factors under a 5K1 motion? Your Honor, the 40 percent that she gave him was from the top of the guideline. The government had requested 50 percent at the low end of the guideline. His sentence is 126 months. If the court had gone along with the recommendation of the U.S. attorney, it would have been 84 months, which would have saved him 42 months in prison. So it is over three years because the judge did not allow the 50 percent. If your question is, was that significant, is that what the question is? Well, yes, the question is, should we consider that fact or are we bound just to decide this case based on whether or not the judge improperly considered non-assistance factors under 5K1? Your Honor, I think it is very difficult to determine from reading the transcript of the hearing what she based that on, whether it was based on 3553A or whether it was based on the criterion in 5K1.1. 5K1.1 says that the court must conduct a judicial inquiry into each individual case before independently determining the propriety and extent of any departure in the imposition of sentence. And she said she would deviate, but she said, I don't think I am going to go 50 percent. And at the same time, she said, since he has been going to various states, et cetera, and giving information, what about Rule 35? If we come back on Rule 35, would that make any difference? Well, it is my contention that for her to say that I am thinking about not giving what the government offered, and one of the reasons, I think, that she said that was to give her a basis for doing the 40 percent off instead of the 50 percent, which I contend is outside of the things that she can consider. It is sort of like, well, and the quotation is somewhat, she says that he will have more incentive to do a Rule 35. If I don't give him the 50 percent, can he come in later and get it reduced then? Well, my thought on that is that he is going to have incentive to try to get a Rule 35 no matter what the sentence is. But I think that was one of the things outside of the criteria for 5K1.1. Mr. Chaffee, as I understand it, it is your position that in deciding what reduction is appropriate under 5K1.1, the judge is limited to the fact of the substantial assistance and factors relating only to substantial assistance. Am I correct about that? Yes, Your Honor. Okay. Now, she says, I am looking at page 67 of JA. The court says, right now I am really just asking you about the government's motion for the substantial assistance. And then she goes in and starts talking about substantial assistance and these other factors. And is it your position that she is, when she is considering these other factors outside of substantial assistance, that that is inappropriate? I think it is inappropriate because she is not clear as to what she is deciding. I am not sure she is not clear. She says, right now I am really asking you about the government's motion for the substantial assistance. And then immediately after that, she starts talking about these other factors. And she talks a lot about the 3553A factors, but very little about why she is not allowing the 50 percent. Well, she is talking about factors that are found in 3553A, but does she mention 3553A when she is talking about them? Let's see. I didn't see that. Let me see. I look on page 70. She gets to line 21. She mentions then she is ready to hear about that. It appears to me, but I could be wrong. That is 70. I intend to depart. I want to hear from everyone. Is that where we are? She says his assistance to the government has been substantial and the court will depart as a result of that. In addition to considering the guidelines on an advisory basis and considering the factors in 183553A, the court will hear from you first, Mr. Shove. So I think she was clear on the 3553 factors, but on the Counsel, can I ask you sort of the same question, but let me put it in a different way. So your brief says very crisply and clearly that the court abused its discretion when it considered non-assistance factors in determining the extent of the 5K11 departure. That is your position? Yes. Okay. One of the other things that the court said was that because of the extent of his cooperation, the large amount of his cooperation in itself made her question his further drug crimes, his other trips. So it is sort of a catch-22. If you know a lot and you have done a lot and can tell the government a lot, then you are going to get more of a recommendation on a 5K1.1. However, she says that because you are way up there and you can get a 50 percent, I am going to conclude that you have done all these other things and that we are not going to give you 50 percent. So it is sort of a catch-22. And she said, well, there are a lot of people who are in our courts who get more time for less drugs, and I represent a lot of people who can't give up anybody. And sometimes they do get fairly large sentences because either they can't give up anybody or they prefer not to what they should say is a snitch. So I think that was a point where she is saying that, oh, yeah, the government is recommending a large reduction, but you are such a criminal and you have done so many trips. Well, she used the word massive amounts of drugs. That is a non-assistance factor, isn't it? It is. They wanted to downplay it and say they weren't concerned. As you know, there are cases that say you can't just speculate on the amount of drugs. Mr. Galyen, in his answers to the judge, said that we didn't base it on that. We based it on what we actually did. And I don't think they ever had any information about amounts of drugs. So I think that is outside the record also, or outside the factors. It is interesting that she should compare him with other people who are in court for lesser amounts of drugs and get larger sentences, but you have to look at it at a specific case-by-case basis. And that is what Rule 5K1.1 says. You have to look at each individual case. She did not go along with the government, of course. And my contention is that her explanation for less than 50% does not show the reason for her giving him 126 months. And I suppose I should talk about the remedy later on, but the question here is reasonableness of the sentence. And based on several things that she mentioned that were non-5K1.1 factors, we don't think that this is a reasonable, fair sentence. So I would ask you to consider that. I know there are, I did mention a couple of cases in I think the Fifth Circuit that are pretty much right along with what this is. Okay. Well, your time is up for your initial argument. Thank you. Let's hear from Mr. Gallion, but you will be able to respond when he is done. Thank you, Your Honor. Yes, sir. Sorry for the voice. May it please the Court, Randall Gallion for the United States. Your Honor, the Court should affirm the District Court's decision because the Court did not err in that it considered the nature, extent, and significance of the defendant's assistance and the extent of the departure was reasonable. Your Honors, as to the sentencing hearing that occurred, and of course Mr. Shoff has gone through and the Court has the record, the Court is well aware of the posture of the case at the time of sentencing. That is that this defendant, Mark Concha, had done substantial assistance. He had cooperated for over a year. He had done a controlled delivery immediately after he was apprehended in Russellville, Arkansas, and that he thereafter participated in a controlled delivery that resulted in an additional four kilos of cocaine being apprehended along with the two individuals in the Middle District of North Carolina that were the distribution point. In addition, another roughly a million dollars was seized as a result of that. Afterwards, Mr. Concha, of course, continued to cooperate and provided information about SASH locations that he had been to in the Northeast, in the Midwest, in the Southeast, in the Far West. Those, however, did not result in additional prosecutions. So to the issue, when we get to the sentencing hearing, the Court is asking about, of course, and it's troubled by the 5K recommendation, that it's 50 percent, and basically gets to the question of whether or not there's going to be a potential Rule 35. And I would contend, Your Honors, that when the Court looks at it in totality, that while the District Court is not specifically saying, okay, now I'm considering the timeliness and now I'm considering the danger to him and now I'm considering the nature of his cooperation and the extent of it and the significance, the Court is doing that in the questions that she's asking. Well, do you agree in determining whether to grant a 5K 1.1, and if so, what reduction is appropriate that the Court is limited to factors relating solely to the assistance the defendant provided the government? Yes, Your Honor. But, you know, the other thing is, as the Court well knows, that determination is not done in a vacuum. And so, for instance, when the Court is looking at the question of what's the extent of your cooperation, that question is not just how long have you been cooperating. That question is, if you're a major player and you have been distributing to the entire United States, then perhaps that bears on what your cooperation is. So let me say it this way. When I look at it, when the government is considering the 5K, of course, and as I said during the course of the sentencing hearing, when an individual proactively cooperates, that is, they participate in a controlled delivery, that's hugely helpful to the government. As the Court well knows, you see those cases all the time. We need those individuals to help make cases. And this individual helped make an important case. The Court, I think, was looking at it from the perspective of that's great that he participated and helped you arrest two individuals here in the Middle District of North Carolina who were distributing drugs. But he also distributed in lots of other places. And that didn't result in anything. And so when you look at the extent of the cooperation, I think it's fair to say in the context of what he could do versus what he did do. You're saying she's in effect saying he didn't do as much as he could have done. Is that the way you read what she's saying? I think that's why I say in the context of the questions that she's asking. She's asking, she actually said, and of course it's in the record there, I believe at 73 of the JA where she says, did his assistance result in any other actual prosecutions in other districts? And it's because she's trying to get the context of how extensive is his cooperation. I, of course, am pointing out it's super dangerous what he's involved in. I'm just thinking out loud. Is that a factor that a judge can consider in determining the K-1.1 motion, that whether or not he cooperated or didn't cooperate in other cases that are not before the court? Well, to the extent that when we're assessing the extent of his cooperation, when he says, I have done deliveries all over, and then all we have in terms of an actual prosecution is the control delivery that he participated in here, I certainly think that that's something that the court can consider in terms of the context of the cooperation. How about a bright line rule according to the text of 5K1? You can't consider any non-assistance factors. What's wrong with that rule? Well, Your Honor, I believe that, to some extent, based on Pierce, and that's why I wanted to make sure, Mr. Shoff's brief uses DeSalle, and that's a Fifth Circuit case, but it stands for the same proposition that this court came up with in 1999 in Pierce, and that is that the court is limited to consideration of the factors in 5K. Counsel, is relative culpability, I mean, the district court also says, and this is right when it's talking about the 5K11 departure, I've seen people with not nearly this culpability go to jail for extended periods of time. What does that have to do with the extent of cooperation? Your Honor, I would agree that that was not one of the comments that I'm saying is a context comment. So that one we're just stuck with. That is just a comment that was made during the course of the sentencing hearing. Well, during the course of discussion where she says, right now I'm really just asking you about the motion for substantial assistance, and then she says, I'm really struggling with this because there was substantial assistance, but, and now dot, dot, dot, I have seen people with not nearly this culpability go to jail for extended periods of time. Right. And, again, the only gloss I could put on that, Your Honor, is that she is asking questions about, or she's saying those things in the context of, she's well aware of the fact that he, based on the information in the PSR, based on Mr. Shoaff's sentencing memoranda, that this defendant had been involved in large-scale drug distribution, not just in North Carolina, but throughout the United States. And so she's trying to, as she says, I mean, she's very candid. She says, I'm trying to sort of figure this out and make it make sense in the context of the cases that we see sort of normally. So that's the best gloss I can put on that. I can see that issue being relevant in determining where in the range you're going to start. Right. But, of course, that has nothing to do with 5K1.1, or do you think it does? No, I don't think the question of, it's almost like a disparate sentences issue, right? And I fully agree that that's a question that is a 3553A question. But, again, as you know, in the context of a sentencing hearing, the court is thinking about a lot of things. And so sometimes, unfortunately, there are comments that are made as the court is thinking the process through. And so that's why I say those are, that's a, a lot of it is context. So certainly understand that comments were made that muddy the water, so to speak. And the government understands that and lives with that. But at the same time, when the court considers the other statements that are made during the course of that sentencing hearing, because as you know, I mean, from reading the record, she spent a lot of time not only just hearing from the parties, but questioning the parties. We had a conference at the bench. There was a lot of discussion related to the 5K. And then at the time of the actual imposition of the sentence, of course, she does an admirable job of describing why it is under 3553A that she's going to give the sentence that she gives. So in the context of the entire proceeding, her consideration, certainly there's no question that she considered the nature, extent, and significance of his cooperation. And then on the question of reasonableness, I think that goes to Judge Floyd's question that you asked Mr. Schoaf, and that was, is it a percentage question or is it a question of the non-assistance factors? Well, to the extent that it's a percentage question, I would argue that the percentage is arguably reasonable. That is that it's not as though she gave 5% or 10% off of a 50% request. And that is, of course, in stark contrast to those cases like Pierce where the government is asking sort of the reverse question. In Pierce, the government is asking for a three-level reduction for substantial assistance, and the court gives 24. And the court in Pierce said that's out of balance, right? That's out of whack. That's not reasonable. And then on the question of the consideration of the non-assistance factors, certainly the court, in asking the questions that she did, considered the significance and usefulness of his assistance, considered our evaluation of the assistance. She heard from me a couple of times related to 5K. She certainly considered the truthfulness and the completeness and the reliability of his information, the nature and extent of his assistance. There was discussion through Mr. Schoaf about the danger or risk that he had by cooperating, because obviously as an individual who is working for the cartel, it's an extremely dangerous situation and, of course, family becomes a potential target. And then, of course, the timeliness of his assistance. He cooperated right when he got apprehended. So the court certainly considered all those things and had that information at the time that the sentence was imposed. So, Your Honor, for the reasons stated both in brief and oral argument, I would ask that the court affirm the decision of the district court. Thank you, Mr. Gaglian. Thank you, Your Honor. I believe you are substituting for trial counsel. No, I'm not. Were you the trial counsel? I was. This is my case. Glad to have you. Thank you. Mr. Schoaf, anything in reply? Governor, Your Honors, I suppose under the heading of be careful what you ask for, as to the remedy in this case, he's already got a 5K, 1.1. He's in prison for over 10 years. He got more time than the other two defendants that he helped the government to convict. So if the case is remanded, of course, every day that he's in prison is a day that he does not want to be there. So if it's remanded in some way that we can get to the sentence that the government recommended, that would be great. But I'm not sure that the judge would do that. But that's about the only remedy that we think we have. So we would ask that it be remanded for re-sentencing. Thank you. Thank you, Mr. Schoaf. We'll come down and recounsel and then go into our last case.
judges: William B. Traxler, Jr., Henry F. Floyd, Pamela A. Harris